JUDGE TUCKER.
Mr. Hay moved to dismiss the appeal in this case, as being improvidently granted by this Court, after the expiration of the vacation next after the term in which the decree was rendered. This will require a review of the several acts passed on the subject of appeals at different periods.
The Committee of Revisors, in 1792, reported to the General Assembly two bills among others ; the first for reducing into one act the several acts concerning the Court of Appeals ; the second, those concerning the Court of Chancery. (Revisal of 1792, c. 63, and c. 64.) The former passed the 26th day of October, 1792; and, in the 14th section (in which the 12th section of the act of 1788, c. 68, is incorporated) declares, “that appeals, writs of error, and su-persedeas, may be granted, heard, and determined by the Court of Appeals, to and from any final decree or judgment of the High Court of Chancery, General Court, and District Courts, in the same manner and on the same principles as appeals, writs of error, and supersedeas, are to be granted, heard, and determined by the High Court of Chancery, and District Courts, to and from any final judgment or decree of a County Court; and the party shall proceed in like manner.”
The act of May, 1788, c. 7, had declared “that any party thinking himself aggrieved by the decree of a County Court in Chancery, and not having entered an appeal from the decree at the time it was pronounced, might appeal from such decree at any time within one month after the decree pronounced, lodging for that purpose with the Clerk of the High Court of Chancery a copy *of the proceedings in the suit, and a petition, suggesting error in the decree, signed by some counsel attending the High Court of Chancery, and also lodging with the petition an appeal-bond, &c. And the Clerk shall thereupon issue a summons,” &c. This clause was inserted in the Chancery law, sect. 16.
The act of 1787, c. 9, declares, “that the High Court of Chancery, or any Judge thereof, out of term time, shall have power for good cause shewn, to allow a petition of appeal, and if necessary, order a supersedeas to stop the execution of any decree pronounced by an inferior Court, at any time within three years after pronouncing the same; the party praying such appeal complying with the terms which the Court or Judge shall annex to such order.” The same act declares that whenever an appeal is prayed for from any inferior Court, or bond is given for the removal of any suit in Chancery, in any manner whatsoever, it shall be sufficient if the bond be executed by good and sufficient securities, although the appellant, or party, shall not execute it. These provisions were inserted in the bill which the Committee of Revisors had prepared and laid before the General Assembly, and will be found, sect. 16,17, 18, of the act reducing into one the several acts concerning the High Court of Chancery. Ed. 1794, c. 64.
Had the bill passed in the same form that it was prepared, no doubt, perhaps, would have been entertained upon the subject. But after the Eegislature had finally disposed of the act concerning the Court of Appeals, which passed as before noticed, on the 26th of October, they seem to have taken up the act concerning the High Court of Chancery, the final passage of which is noticed as of the *637 29th of November following'. In that act, after having probably approved of the rules contained in the 16th, 17th, and 18th sections, as applicable to appeals from the Inferior to the Superior Court of Chancery, and after going through the *whole bill reported by the Committee of Revisors, they appear to have thought it necessary to provide for two particular cases, for which there was either no provision, or not such as the Legislature on more mature consideration approved of; and accordingly added the 59th and 60th sections of the bill; the former relative to appeals from the High Court of Chancery; the latter relative to bills of review. It is remarkable that the provisions in both these clauses are introduced with a preamble indicative of the intention of the Legislature to give to both subjects a due consideration and to provide for them accordingly.
The former recites, (sect. 59,) “whereas many persons against whom decrees may have been rendered in the High Court of Chancery, may desire to appeal from such decrees, but have been hindered from doing so, at the term in which the said decrees were pronounced, be it enacted, that if upon a petition to any Judge of the Court of Appeals, or the Judge of the High Court of Chancery in vacation next after the term when such decree shall have been rendered for relief, in such a case, it shall appear to his satisfaction, that the failure to appeal from his decree at the time, or during the term when it was pronounced, did not arise from any culpable neglect in the petitioner, or that, upon the whole circumstances of the case, the petitioner ought to have the benefit of an appeal, it shall be lawful for the said Judge to grant the said appeal,” &c.
This section appears to me as fully to embrace, and provide for 1 he time, manner, terms, and conditions upon which appeals might be granted from the High Court of Chancery to the Court of Appeals, by any Judge of this Court, or any Judge of the High Court of Chancery in vacation, as the 18th section embraces and provides for the granting of an appeal by the Judge of the High Court of Chancery in vacation, to any decree of an Inferior Court. Nor can I discover any difference whatsoever in the interpretation of the words “for good cause shewn,” in the former section, and those used in the latter, “upon the ®whole circumstances of the case.” To my apprehension, they import precisely the same thing, and, of course, ought to receive the same construction ; the first as applicable to the decrees of County Courts, of which the Legislature were then speaking, in sect. 18th ; the second as applicable to those of the High Court of Chancery, of which they meant to speak in the 59th section. There is, therefore, no necessity to turn back to the 18th section to know what the Legislature meant when they added the 59th section, as to that particular ; but, with respect to the power of the Court to allow a petition of appeal, at any time within three years, the 59th section is altogether silent. The 18th section, then, may receive a construction totally independent of, and unconnected with the 59th section, as far as relates to the power of the Court in term time ; although we must resort to the latter, to determine the power of the Judges in vacation.
That case is not now before us ; and extrajudicial opinions have generally been deemed improper in this Court. I shall, therefore, confine my opinion at present, to the case before us. And, in doing so, I have no hesitation in deciding that the Court had power to allow the appeal in this case, at the time it was allowed. In this case the decree was pronounced July 26, 1803, and the petition of appeal was allowed by the Court of Appeals, in Court, November 10, 1803. The act of 1806, c. 22, declaring that no appeal, writ of error, or supersedeas, shall be granted by the Court of Appeals in Court, did not pass till three years afterwards : and consequently, the motion to dismiss it, asimprovi-dently granted, ought to be overruled.
JUDGE ROANE. By the 14th section of the act constituting the Court of Appeals,(a) it is provided, that “appeals, writs of error, and supersedeas, may be granted, heard, and determined, by the Court of Appeals, to and from any final decree or judgment of the High Court of Chancery, General Court, and District Courts, in the same *manner, and on the same principles, as appeals, writs of error, and super-sedeas, are to be granted, heard, and determined, by the High Court of Chancery, and District Courts, to and from any final decree or judgment of a County, City, or Borough Court; and the party shall proceed in like manner, and the damages, in case of affirmance, shall be the same in the Court of Appeals, as in those Courts respectively:” and in the case of Gaskins v. The Commonwealth,(b) these words “in the same manner, and on the same principles,” were construed by this Court to embrace the period of limitation, provided for suing out writs of supersedeas, to the judgments of District Courts, and to adopt it in relation to judgments rendered in the General Court. If, therefore, the 18th section of the act constituting the High Court of Chancery (c) is still in force, the limitation of three years, allowed to that Court, for granting appeals from the judgments of the inferior Courts, is, by this decision, made to apply to the grant of appeals from the decrees of that Court, by the Court of Appeals. It remains to inquire whether that section of the Chancery law is in force or not.
The act constituting the Court of Appeals passed on, and was in force from, the twenty-sixth of October, 1792 ; whereas the act concerning the High Court of Chancery did not pass, nor commence its operation, until the twenty-ninth of November, 1792: and it is said that the 18th section only was reported to the Legislature by the Committee of Re visors, but that the 59th was then enacted for the first time. However it may be as to this report, respecting- which the people of the Commonwealth know nothing, it not being published and promulgated for their information ; it is clear that the provision contained in the 18th section was the then existing law, (i. e. on the 26th of October, 1792,) it having been enacted in 1787, c. 9, *638 sect. 2. If any inference therefore is to be drawn from the circumstance that the law concerning' the Court of Appeals was passed some days before the other ; it would rather be that the 18th section was only referred to and adopted by it, than the converse ; *as that section embraced a then existing provision, whereas the 59th section was at that time in nubibus. But a construction going to reject the 59th sect, has never entered the head of any person ; and the contrary I understand to be admitted by the judge who has preceded me. Whatever the construction might have been, had the 14th section of the Court of Appeals’ law tied the case down to the manner and principles then existing in relation to appeals granted by the Court of Chancery, the construction in ' this instance is left exceedingly clear, not only by the general principle operating in such cases, but by the very terms of the act. That general principle is that the accessory follows the nature of the principal; and being generally referred to it for the standard of regulations and principles, will abide such changes and modifications as may thereafter be attached to it. The terms of the act, which seems to come in aid of this general principle, are, that appeals shall be granted by this Court in the same manner, &c. as appeals, writs of error, &c. are to be granted, heard and determined by the High Court of Chancery; thus expressly extending to the cases of prospective and subsequent alterations.
As to the question whether the 18th section of the law aforesaid is repealed by the 59th section, I will premise that that construction is equally inconsistent with the rule (for construing statutes) that the former statute, or the former part of the same statute is only so far repealed as it is repugnant to the latter, and with the general and just provision in all our acts, allowing a right of appeal for cause of error during a much longer time than that provided by this 59th section. The 18th section allows an appeal for good cause, at any time within three years : but the 59th section (recognising and enlarging the right to appeal as of course) provides for cases where an appeal, on this ground, has not been prayed during the term in which the decree was pronounced, where it shall appear that the failure to appeal at the time was not owing to any culpable neglect of the petitioner. Nothing could be more just than this provision, as, without it, the right to appeal (as of course) *would be lost to all persons not actually attending the Court, or who had not foreseen that the decrees would be against them, and previously instructed their counsel on the subject. It must not be lost sight of, that confining the right to appeal to the next vacation only, would, considering the shortness of some of the vacations, and remote residence of many of our citizens, operate a denial of the right altogether, (however erroneous decrees may be,) except where the suitors are actually attending, or their counsel may have been instructed as aforesaid ! As to this additional provision in the 59th section, that an appeal may be also granted where “upon the whole circumstances of the case,” it appears that one ought to be allowed ; — that was, perhaps, tautologous, and followed, a fortiori, from the preceding provision ; but was not meant to supersede or repeal the foregoing provision contained in the 18th section.
This construction of the act has uniformly obtained, ever since its passage in 1792. It has obtained the sanction of every Judge who has sat in this Court, since that time ; the Judge who preceded me, it seems, not excepted ; and although no solemn discussion was deemed necessary until the present time, it was because no doubt was ever suggested. It is within my knowledge that the point was at different times considered by the Judges, and even by the Court, who have granted very many appeals after the lapse of the ensuing vacation, as appears by a list furnished by the Clerk and now before me. The point therefore, of the construction of the act is equally clear in itself, and concluded by a long series of decisions upon the subject.
Thus stands the case, independently of the act of January, 1807, c. 22. The object of that act was to expedite the progress of the docket of the Court of Appeals. This is evident not only from its abolishing appeals on forthcoming bonds, but also for its transferring from the Court to the Judges, in vacation, or in term time, the power of granting appeals; the discussions concerning which, had probably exhausted much of the time of the Court. Its object was not to diminish or abridge the right *of appeal, except in the beforementioned instance ; under the influence of the maxim that the exception proves the rule. Such could not have been the object of the Legislature, in the degree now contended for, without not only departing from the general system of our laws as aforesaid in relation to the right of appeal, but also abridging very much the utility of this Court. Let us then see what are the words of the act on the subject. The words are that appeals, &c. shall not be hereafter granted by the Court of Appeals, but by the Judges, or any one of them, either in vacation, or in term time, “under the regulations heretofore prescribed by law.” When a power is transferred from one tribunal to another, it would seem naturally to follow that the regulations under which the former acted would be transferred to the latter : but the Legislature not satisfied to let it rest on this general principle, have made an express provision on the subject. This term regulations would seem fully as competent to embrace the term of limitation on this subject, as was the expression, in the act before mentioned, on which the decision in Gaskins v. The Commonwealth was founded.
It is said that the regulations here intended are such as appertain only to appeals as heretofore grantable by the Judges; or, in other words, only embrace the period of time prescribed by the 59th section, which relates to a grant of appeals by the individual Judges. The answer is, that, in that point of view, the provision is superfluous ; nothing being more clear than that the regulations under which the Judges act in relation to granting appeals would ipso facto extend to any new class of appeals which might be added to the jurisdiction heretofore exercised by them upon the subject.
*639 In every light in which I can view this subject, I have not a particle of doubt but that we ought to overrule the motion in both C<ISCS<
208
* JUDGE FLUMHiG was of the same opinion with JUDGE ROANE.
It was therefore unanimously decided that this appeal was not improvidently awarded, and that the motion be overruled.
In the case of Mackey v. Bell, the following opinion was delivered bv JUDGE TUCKER.
This was an appeal from the Richmond Chancery Court. Mr. Hay moved to dismiss the appeal in this case, as having been improvidently granted by one of the Judges of this Court, after the expiration of the vacation next after the term in which the decree was rendered. It differs from the case of Tomlinson v. Dilliard in this; that that appeal was granted by the Court, this, by one of the Judges out of Court.
In the review of the several acts of the Legislature upon the subject of appeals to this Court, which I took in the case of Tom-linson v. Dilliard, I have anticipated much that I should have had occasion to say in this case. I beg leave therefore to refer to what I then said, as constituting the foundation of my present opinion.
Had the revisal in 1792 never taken place, or been made, the laws passed antecedent thereto would have given the rule in all these cases.
The act of May, 1778, allows an appeal from the decree of a ■ County or other inferior Court, at the discretion of the party, within one month after the decree was pronounced. It could not be prevented or denied, if he complied with the requisitions of the law. -This provision was consolidated in the 16th section of the act concerning the High Court of Chancery, and though it mentioned appeals from the County Courts only, it might, perhaps, have applied to those from the High Court of Chancery under the act of 1788, c. 68, consolidated in the 14th section of the *act concerning the Court of Appeals ; but this point is not now before us, and I mean not to give any opinion upon it.
The act of 1787, c. 9, consolidated in the 18th section of the act of 1792, concerning the High Court of Chancery, allowed an appeal from any inferior Court to be granted by the High Court of Chancery, or the Judge thereof in vacation, for good cause shewn at any time within three years after the decree should be pronounced. And by the operation of the act of 1788, c. 68, consolidated in the 14th section of the act concerning the Court of Appeals, this Court was invested with the same power of granting appeals, for the same space of time, to the decrees of the High Court of Chancery. But although this is very clear as to the power of the Court, there is great room to doubt whether any power was, even by implication, given to the Judges of this Court, as Judges out of Court. Eor the words of the 14th section of the Court of Appeals’ law, are, “ appeals, writs of error, and supersedeas, may be granted, heard and determined, by the Court of Appeals; (not mentioning or referring to the Judges individually ;”) so that the true construction seems to be, that the Court might grant appeals, the Court might grant writs of error, or the Court might grant writs of supersedeas, upon the same principles and in the same manner, as appeals, &c. might be granted by the High Court of Chancery, or by any District Court of Common Law, and I incline very strongly lo the latter construction. And I think the decision of this Court, in the case of The College v. Lee’s Executors, strongly in favour of this construction. The act for enlarging the right of appeals in certain cases had declared that it should be lawful, for the High Court of Chancery, upon any interlocutory decree, in its decretion to grant an appeal to this Court. But although that Court consisted only of one Judge, whose discretion might be presumed to be the same out of Court as in Court ; yet this Court decided he could only exercise that discretion, under the law, in Court; and dismissed the appeal. The *case seems much stronger where the Court consists of a plurality of Judges.
But, (be this last point as it may,) as I have observed in the former case, when the Legislature had gone through all the laws consolidated in the act concerning the Court of Appeals, and passed that act; they to'olr up the act concerning the High Court of Chancery ; and approving of all the provisions contained in the 16th, 17th, and 18th sections, as applicable to the County Courts, but probably not wholly approving of them as applicable to the decrees made by the High» Court of Chancery, they introduced an entire new clause, section 59, by which leaving the power of the Court as it stood under the operation of the 14th section of the Court of Appeals’ act, upon the 18th section of the Chancery act, they granted a new power to the Judge of the High Court of Chancery, and restrained the power of the Judges of this Court to grant an appeal, to the vacation next after the term when the decree should be pronounced, instead of allowing them to exercise that power, as the Court might, at any time within three years ; if, indeed, they were ever invested with such a power, which I think they had not. Here we find a new power given to one Judge ; and a former power, which by implication and construction only may be supposed to have been given to other Judges, clearly defined and limited to a,shorter time than it had been before extended to.
The maxim that legis posterius priores contrarias abrogant, leads us to say, that so much of the 14th section of the act concerning the Court of Appeals, by which a general reference is made to the laws before that time passed on the subject of appeals from the County Courts as may be contrary to the express subsequent provision contained in the 59th section of the Chancery law, was thereby repealed. We are told that if a former act says that a Juror upon such a trial shall have twenty pounds by the year ; and a new statute afterwards enacts that he shall have twenty marks, (which were but 131. 6s. 8d.) here the latter statute, though it does not express, yet necessarily implies a negative, *and virtually repeals the former. 1 Black. Com. 89. So here, when the clause respecting County Courts, *640 was by implication and construction extended to the High Court of Chancery, and to the Judges of this Court,' as well as the Court itself, under former laws, to three years from the time of passing the decree ; yet, when the Legislature thought proper to add another clause, expressly declaring that the Judges of the High Court of Chancery, and of this Court, might grant an appeal during the vacation next after the term when the decree shall have been pronounced, this latter clause contains such a negative to the former power of the Judges, as to my apprehension is perfectly parallel to the case put by Judge Blackstone above.
Statutes in pari materia ought certainly to be construed together ; but certainly not so that a construction, arising from implication only, from that which is contained in a former law, shall overrule the express words which the Legislature have used in a later statute, and upon the very point in controversy.
We come now to consider the act of 1806, c. 22, sect. 4, which enacts, that no appeal from any decree pronounced in any of the Superior Courts of Chancery, nor any writ of error or supersedeas, shall hereafter be granted by the Court of Appeals in Court; but the Judges, or anyone of them, either in vacation, or during the terms of the said Court, shall have power to grant any such appeal, &c. under the regulations heretofore prescribed by law. What were those regulations ? The same that are contained in the' 59th section, by which, and by which only, the Judges individually, were authorised to grant any such appeal. That is to say, during the vacation next after the term when the decree shall have been pronounced. The words “either in vacation or during the terms of the said Court,” do not, in my opinion, enlarge the powers of the Judges beyond what they were before invested with, but were probably meant to remove any doubt that might arise, as to the exercise of the power before given them, during the term, since *the right of the Court during th at period was expressly taken away.
The cases of M’Callv. Peachey, (1 Call, 55,) Bedinger v. The Commonwealth, October term, 1803, (3 Call, 461,) Warrens v. The Commonwealth, and Stras v. The Commonwealth, both upon writs of supersedeas, granted to judgments of the District Courts im criminal cases. May 2, 1805 ; Bowyer v. Lewis, (1 Hen. & Munf. 563,) The College v. Lee’s Executors, (2 Hen. & Munf. 557,) in which the appeal was dismissed after a decree of reversal had been pronounced by this Court, and perhaps some others might be adduced to shew that this Court, on former occasions, has not been so tenacious either of its jurisdiction, or even of its opinions, as to consider them, like the laws of the Medes and Persians, irrevocable and unchangeable. Whoever compares the case of Jones v. The Commonwealth (1 Call, 555,) with that of Bedinger v. The Commonwealth (3 Call, 461,) will readily discover in the latter, that however this Court may have mistaken its jurisdiction on the former occasion, it was ready to relinquish it on the latter.
For these reasons I am of opinion the appeal ought to be dismissed as improvidently granted.
JUDGE ROANE was of a different opinion, for the reasons assigned by him in the case of Tomlinson v. Dilliard.
JUDGE FLEMING. The only question before the Court in this case is, whether a Judge of the Court of Appeals may, for good cause shewn, lawfully allow an appeal from a decree of a Superior Court of Chancery, and, if necessary, order a supersedeas to stop execution thereof, at any time within three years after pronouncing the same.
Soon after the declaration of American independence, the primary object of the Legislature of Virginia was to form a system of jurisprudence, for the due administration of justice, adapted to the principles of a republican constitution, which occasioned a material variation from the system existing under the regal government.
*It was found expedient to constitute and establish several Courts in regular gradation from the lowest to the Supreme Court of Appeals ; the lower order of which are the County and Corporation Courts, having within their respective precincts, both Common Law and Chancery jurisdiction. The next in order was the General Court, having general and superior jurisdiction in cases at common law; and then followed the High Court of Chancery, with general and superior jurisdiction in all cases of equity. Appeals from the County and Corporation Courts at common law lay to the General Court; and in cases of equity, to the High Court of Chancery; and from either and both of those Courts, to the Supreme Court of Appeals. The business, however, having accumulated in the General Court in an extraordinary degree, the Legislature, in the year 1788, thought proper to divide the State into eighteen distinct Districts, establishing a Court of Common Law in each, with the same jurisdiction within its respective District as the General Court possessed and exercised, allowing appeals from the inferior Courts of Common Law, in the same manner and on the same principles as they were formerly allowed throughout the State to the General Court.
In the year 1792, the several acts of Assembly (and particularly those respecting the administration of justice) were, by a Committee of Revisal, in a great measure condensed, and broug-ht nearer one point of view. On the report of the Committee, the Legislature passed them (with some small alterations or additions) as they now appear in our statute-book, so far as they seem to affect the question now under discussion ; in deciding which, I shall consider them taken altogether as one act passed on the same day, and forming a general system of jurisprudence; and as I deem the right of appeal from an inferior to a superior tribunal one of the most beneficial and desirable privileges we can enjoy ; and in which every individual citizen may, at one time or other, be interested, I must give to every act and clause on the subject of appeals a liberal construction; and shall take the liberty of transposing *some of the clauses, but without changing a single letter, as by so *641 doing the several sections may be well reconciled with each other.
By the act concerning the Court of Appeals,
Section 14. Appeals, writs of error, and supersedeas, may be granted, heard, and determined, by the Court of Appeals, to and from any final decree or judgment of the High Court of Chancery, General Court, and District Courts, in the same manner and on the same principles as appeals, writs of error, and supersedeas, are to be granted, heard, and determined by the High Court of Chancery and District Courts, to and from any final decree or judgment of a County, City, or Borough Court.
We are to inquire then, in what manner, and on what principles, those appeals, writs of error, and supersedeas, are granted ; but on this occasion it may be confined to appeals, they being the only subject of the present inquiry.
To appeal from a judgment, or decree of an inferior to a Superior Court, is a matter of right, if it be done at the time or during the session of the Court at which the judgment or decree may be rendered.
By the 16th section of the act concerning the High Court of Chancery, one month is allowed to persons wishing to appeal from decrees of the inferior Courts to the High Court of Chancery, the person lodging with the Clerk of that Court a petition and copy of the proceedings, together with the bond, &c.
The petitioner having performed those requisites, there is no discretion left with the Chancellor, but the appeal is to be heard and determined in the same manner as if it had been entered at the time the decree was pronounced.
In the Syth section of the same act, after a short preamble, it is enacted, that upon a petition to any Judge of the Court of Appeals, or the Judge of the High Court of Chancery, in vacation next after the term when such decree shall have been rendered, for relief in such a case, if it shall appear to his satisfaction that the failure to appeal from his decree, at the time, or during the term when it was pronounced, *did not arise from any culpable neglect in the petitioner, or that, upon the whole circumstances of the case, the petitioner ought to have the benefit of an appeal, it shall be lawful for the said Judge to grant the said appeal, &c.
This clause provides for cases that frequently happen from accidents, where the parties live in the vicinity of the Court.
The 18th section of the same act provides for cases more rare, and which generally arise from the very remote distance that the parties dwell from the seats of justice : it au-thorises the said Court, or the Judge thereof in vacation, for good cause shewn, to allow a petition of appeal, and if necessary, order a supersedeas to stop the execution of any decree pronounced by an inferior Court, at any time within three years after pronouncing the same ; the party praying such appeal and supersedeas, complying with the terms which the said Court or Judge shall annex to such order; leaving it discretionary in the Court, or Judge, to impose such terms as the circumstances of the case may seem to require.
This I consider as a very beneficial and necessary clause in the act, and to which the reference in the 14th section of the act concerning the Court of Appeals forcibly applies.
It could never, in my apprehension, have been the intention of the legislature, when forming a system for the equal distribution of justice throughout the State, to allow a, party, in an inferior Court, three years to obtain an appeal, in certain cases, where the subject in controversy might not exceed thirty-three dollars and thirty-three cents; and tie down another party, in every case, let the circumstances be what they might, to the short space of time intervening between two sessions, formerly of the High Court, but now of the Superior Courts of Chancery; when the subject in litigation must at least amount to one hundred dollars, or 3,0001bs. of tobacco, that being the smallest sum for which an appeal will lie from the Superior ^Courts of Chancery to the Court of Appeals; and it may frequently happen that the whole property and fortune of a party shall be at stake: and if it was proper to make any distinction between the cases, the indulgence should certainly, in my conception, have been extended to those who were parties in a Court having jurisdiction over the whole State, and many of them living at the distance of near four hundred miles from the seat of justice; and since the establishment of the District Chancery Court, there are still thousands of our citizens who live at the distance of near three hundred miles, from which circumstance a variety of accidents may happen to preclude them from making application for an appeal in the short space of time contended for.
A Judge of the Court of Appeals may, for good cause shewn, grant a supersedeas to a judgment of a District Court at Common Daw, if error appears on the face of the record, at any time within five years after entering the judgment; and why a person aggrieved by a decree in Chancery should be restricted to a few months when seeking redress, I confess myself at a loss to conceive.
Since the act of the 14th of January, 1807, the fourth clause of which (for a sound and obvious reason, which was to save the time of the Court overloaded with business) declares that no appeal from any decree pronounced in any of the Superior Courts of Chancery, should thereafter be granted by the Court of Appeals in Court, it has become more necessary that the power should be exercised by the Judges out of Court.
By taking these several acts together, considering them as one act, embracing the same subject, and giving them a liberal construction, I can perceive neither inconvenience nor injury to any one; but, should a different construction prevail, I can foresee great inconvenience, much injury, and the probable ruin of families ; for, however unjust or injurious the decree, (and some such, from human fallibility, there are, have been, and may again be,) and whatever accident or misfortune may befall a party grieved (living, ^perhaps, some hundreds of miles from Court) to prevent an early application for an appeal; after the lapse of *642 a few months, the chance of relief is gone for ever. And this, too, in a country distinguished for the liberality and equality of its laws.
On every viéw that I have been able to take of the case, it appears to me that any Judge of the Court of appeals is authorized (for good cause shewn, of which he is to be judge himself) to grant an appeal (and to award a supersedeas if necessary) from any decree of a Superior Court of Chancery, at any time within three years after the same may have been pronounced ; and I am, therefore, of opinion, that the motion to dismiss this appeal, as having been improvidently granted, ought to be overruled.
The majority of the Court, therefore, decided that the appeal had not been improvidently allowed ; and the motion to dismiss it was overruled. _

 Rev. Code, 1 vol. p. 62.

 1 Call, 194.

 Rev. Code, 1 vol. p, 65.